Caleb Marker (SBN 269721)
Email: caleb.marker@zimmreed.com
Jeff Westerman (SBN 94559)
Email: jeff.westerman@zimmreed.com
ZIMMERMAN REED LLP
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

[Additional Attorneys for Plaintiffs Listed on Back Cover]

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY TRAN and KASANDRA HILL, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>NOOD VENTURES LLC and DOES 1–10,<br><br>        Defendant. | **Civil Action No.:**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Tiffany Tran and Kasandra Hill, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant Nood Ventures LLC ("Defendant" or "Nood") and make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      This is a case concerning deceptive representations and omissions made by Defendant because of its misleading and unlawful pricing, sales, and discounting practices on its websites, which directly violate California a California statute and as a result deceive the reasonable consumer.

2.      Defendant Nood sells and markets skin care and hair removal products online through the Nood website, trynood.com/.

3.      The products at issue are all goods that have been offered at any time on Nood's website, at a sale or discounted price from a supposedly higher reference price displayed to the consumers in the product ad, where that higher price was not actually offered in compliance with the law (the "Products").

4.      Defendant's website lists various items on sale or discount, and picture a stricken purported former or prevailing market price next to the current supposed "sale" price. However, the former or prevailing market price listed next to the sales price is not actually the former or prevailing market price at which the product was sold in the previous three months. Instead, it is a false or inflated price used to trick consumers into believing they are receiving a discount on their purchase. It is false because the item has not been listed for sale or sold on the website in the previous three months at the listed former price.

5.      Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

6.      Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501. Therefore, the statute specifically prohibits this type of fake discount, where the advertised former price is not the prevailing price during the specified timeframe.

7.      Upon investigation, all or nearly all of the reference higher prices on the website are false and misleading. They are not former or prevailing market prices at which the products were offered on the websites during the previous three (3) months.

8.      Plaintiffs—like other customers across the United States—fell prey to Defendant's false, deceptive, and misleading discount scheme. As a result, Defendant has earned money selling products at misrepresented discounts that do not actually exist.

9.      When purchasing the Products, Plaintiffs relied on Defendant's misrepresentations that the Products were on sale and were previously sold at the former strikethrough price listed next to the sale price. However, these products were not actually sold at the former or regular price listed

on the website within the previous three months before the purchase. Therefore, the discount was false.

10.     Defendant's conduct violated and continues to violate the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; and the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*. Defendant's conduct also constitutes negligent misrepresentation, and has unjustly enriched Defendant by the sale of these Products.

11.     Accordingly, Plaintiffs bring this civil action to put an end to Defendant's illegal conduct. Through this class action lawsuit, Plaintiffs seek monetary damages, restitution, and declaratory and injunctive relief on behalf of the proposed Class.

**PARTIES**

12.     Plaintiff Tiffany Tran is a citizen and resident of Irvine, Orange County, California.

13.     Plaintiff Kasandra Hill is a citizen and resident of Santee, San Diego County, California.

14.     Defendant Nood Ventures LLC is a Texas limited liability company with its principal place of business at 1109 E 5th Street, Suite 1301, Austin, Texas 78792. Defendant's member is Samuel Garst, a resident of Texas. Defendant is an online retailer that sells products in California and across the United States.

15.     Defendants Does 1–10 were responsible in some manner for the injuries and damages caused to Plaintiffs and the Class, but their identities and/or roles are not yet known.

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which (1) there are at least 100 members, (2) the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and (3) Plaintiffs and members of the putative Class are citizens of a state that is different from the states in which Defendant is a citizen.

COMPLAINT FOR DAMAGES

17.     This Court has personal jurisdiction over Defendant because it has contacts with California that are so continuous and systematic that it is essentially at home in this state. Defendant sold Nood products to consumers in California, including Plaintiffs. Defendant regularly conducts and solicits business in California, provides products to persons in California, maintains an interactive commercial website, offers to ship products, and does ship products to California, allows customers in California to order products, and derives substantial revenue from customers in California.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' and the Class Members' claims occurred in this District, and Defendant is subject to the Court's personal jurisdiction.

## BACKGROUND FACTS

19.     Defendant markets and sells skin care and hair removal products on its website.

20.     Defendant claims on its website that it is trusted by more than 750,000 customers:



21.     Defendant, through its website, has sold hundreds of thousands of units of merchandise to customers in California and nationwide.

## I.     Nood's Fake Discount Scheme

22.     Defendant creates the false impression that its Products' regular or former prices are higher than they truly are.

23.     On any given day, most if not all products on Defendant's various websites are represented as being discounted from a substantially higher reference price. On individual listing

pages and category listing pages, the supposed mark-downs are represented to consumers by (1) prominently displaying a "crossed-out" or strikethrough reference price next to a sale price, (2) stating "____% off" adjacent to the higher reference price, and/or (3) depicting the sale price in bold text adjacent to the reference price. Example screenshots are provided below:



24.    Defendant also advertises limited-time discounts from former prices. The include, for example, discounts offering "X% off" on the Flasher 2.0 product and "X% off sitewide" for a limited time period—even displaying a count-down clock to induce purchases:

[Image on next page].

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22



23      25.     Far from being time-limited, however, Defendant's discounts are routinely available

24  on the website. These pricing and advertising practices are deceptive and pressure consumers, like

25  Plaintiffs, into purchasing products from Defendant at an inflated price, or that they would not have

26  purchased without the deception. Defendant intends to mislead consumers into believing that they

27  are getting a bargain by buying products from its website on sale and at a substantial and deep

28  discount. For many, if not all products, Defendant did not offer or sell the products on the website

at the reference price for the three months immediately preceding the listing of the sale. Therefore, the reference price is artificially inflated and the advertised discounts are deceiving.

26.     The above photos are just a few examples from Defendant's website that show how it consistently lists its false discounts on the website.

27.     The below sections describe further the types of deceptive sales schemes instituted by Defendant's on its website.

### A. *Plaintiffs Purchased Products that Were Falsely Advertised as Having Discounts*

28.     On October 15, 2022, Plaintiff Tran purchased a Flasher 2.0 for her personal use directly from Nood's website at a sales price of $189, which was advertised as a "sale" from the original "retail price" with a line striking out "was $270," with a representation of "30% off" boldly displayed next to it. She made this purchase while living in Orange County, California.

29.     On December 24, 2023, Plaintiff Hill purchased a Flasher 2.0 for her personal use directly from Nood's website at a sales price of $169, which was advertised as a "sale" from the original "retail price" with a line striking out "was $270," with a representation of "37% off" boldly displayed next to it. She made this purchase while living in San Diego County, California.

30.     However, based on historical data of the Product being sold, $270 has never been the price, let alone the prevailing price, of the Product.

31.     At the time Plaintiffs purchased Product, the price of the Product purchased by Plaintiffs generally hovered between $159 to $189 and had remained in that range for at least two years.

32.     As evidenced by the images below, Defendant did not list or sell this product for the $270 strikethrough reference price for at least the three (3) months prior to Plaintiff Tran's purchase on October 15, 2022. Below are images from Defendant's website from January 2022 to October 2022:

[Images on Next Page].

COMPLAINT FOR DAMAGES

1  *January 28, 2022*



*April 7, 2022*



COMPLAINT FOR DAMAGES

1

2  _May 12, 2022_



1

2    _September 13, 2022_

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18



19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

*October 1, 2022*



*October 31, 2022*



COMPLAINT FOR DAMAGES

33.     Defendant also did not list or sell this product for the $270 strikethrough reference price for at least the three (3) months prior to Plaintiff Hill's purchase on December 24, 2023. Below are images from Defendant's website from August 2023 to December 2023:

*August 11, 2023*



COMPLAINT FOR DAMAGES

1
2   *September 23, 2023*
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19
20
21
22
23
24
25
26
27
28

1

2   *October 8, 2023*

3



15

*November 14, 2023*



COMPLAINT FOR DAMAGES

1   *December 18, 2023*

2

3

4

5

6

7   **The Flasher™ 2.0**

8

9   **PERMANENTLY REMOVE HAIR WITH PRECISIONPULSE™ IPL**

10

11   ❋ Visible results in just 3 Weeks

12   ❋ Pain-free & effective PrecisionPulse™ IPL

13   ❋ Quick 10-minute treatments

14   ❋ Permanently removes hair

15   ❋ Continuous Glide Mode

*"It's surprisingly speedy...improvement by the second week!"*

**InStyle**

**COLOR: GLOSS WHITE (LOW STOCK)**

*Gloss White is on backorder. Ships free December 18th.*

Gloss White - $169.00 USD

**$169**   ~~WAS $270~~   **37% OFF**

or flash now, pay later with

-   1   +      **ADD TO CART**

**LOG IN**

**RESULTS   FAQS**

**Go**   NOV   **DEC**   FE
**18**
2022   **2023**

17   17

34.    As evidenced by Defendant's own website, the Nood Flasher 2.0 was not listed or sold at the strikethrough reference price of $270 within the three months (and likely longer) prior to either Plaintiff's purchase. In fact, Defendant instituted a similar discount during the preceding three months of each purchase, using the same false reference prices.

35.    Defendant falsely represented that the Product had a certain regular or former price (the reference price) and that Plaintiffs were receiving a substantial discount. In truth, the Products Plaintiffs purchased were not substantially marked down or discounted, and any discount they were receiving was exaggerated.

36.    Plaintiffs relied on Defendant's representations on the website that the Product was being offered at a discount and that previously the Product was listed and sold on the website at the stated reference price. Plaintiffs would not have purchased the Product if they had known the Product was not discounted as advertised, and that they were not receiving the advertised discount.

37.    Upon information and belief, Defendant enacts the same false discount scheme with many, if not all, of the products listed on its website.

38.    Based on Defendant's numerous advertisements, reasonable consumers would reasonably believe that the reference prices Defendant advertises are Defendant's former prices (that is, the price at which the goods were actually offered for sale and sold at before the supposedly limited time offer went into effect). In other words, reasonable consumers would reasonably believe that the reference prices Defendant advertises represent the amount that consumers formerly had to pay for Defendant's goods, before the purportedly limited-time sale began.

39.    Reasonable consumers would also believe that the reference prices Defendant advertises represent the true comparison price for the Products, and are the prevailing price for those Products, and that they are receiving reductions from those regular prices in the amounts advertised. In truth, however, Defendant persistently offers sales at lower prices and only gives the false appearance of discounts off the purportedly regular prices it advertises. As a result, Defendant's price and purported discount advertising is false. The regular prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells, and do not represent the true comparison price for the Products, because Defendant's Products

COMPLAINT FOR DAMAGES

are consistently available for less than that, and customers did not have to formerly pay that amount to get those items within the statutory time period, or longer. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.

### B. The Reference Prices Are Not the Prevailing Market Price of the Products, Including During the Rolling 90-day Period Prior to the Offering and/or Purchase

40.     Defendant is the manufacturer of the Products, and on information and belief the vast majority of the Products are sold by Defendant directly to consumers (at a purportedly discount price), on its website.

41.     Defendant is a direct-to-consumer brand that sells its Products online. As the primary seller of the Product, Defendant sets the prevailing market price—most sales are made at Defendant's prices, because Defendant is the one making the sales.

42.     In short, because the Product is most commonly sold by Defendant on its website, it is most commonly sold for the discounted prices that are always available from Defendant. To the extent the Products are sold through a third-party seller, the third-party seller's prices for the Product are not the prevailing market price.[1] Upon information and belief, many, if not all, of the Nood products that are sold anywhere are sold by Defendant on its website.

## II.     Research Shows That Reference Price Advertising Influences Consumer Behavior and Perceptions of Value

43.     The effectiveness of Defendant's deceitful pricing scheme is backed by longstanding research.

44.     "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[2] Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to

---

[1] Plaintiff's investigation revealed that the Product was also listed on Amazon. On Amazon, as on Nood's own website, the regularly-listed, prevailing market price of the Product in the relevant time period during and preceding each Plaintiff's purchase was far less than Nood's $270 reference price, as demonstrated by the price-tracking website "Camelcamelcamel" (https://camelcamelcamel.com/product/B099H8B6SZ?tp=all).

[2] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).

buy the product increase, while their intention to search for a lower price decreases."[3] For this reason, the Ninth Circuit in *Hinjos* held that a plaintiff making a claim of deceptive pricing (similar to the claim at issue here) had standing to pursue his claim against the Defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013).

45.     "[D]ecades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[4] According to academic studies, "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[5]

46.     Further, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

47.     Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[6] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[7]

---

[3] *Id.* at 56.

[4] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002).

[5] *Id.*

[6] Khalid Saleh, *How Discounts Affect Online Consumer Buying Behavior*, Invesp, June 16, 2024, https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/ (last visited September 11, 2024).

[7] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers PR NEWSWIRE (April 25, 2018), https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html#:~:text=In%2DLanguage%20News-
(footnote continued)

48.     Another academic journal explains that "[r]eference price ads strongly influence consumer perceptions of value … Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when … the retailer highlights the relative savings compared with the prices of competitors … [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."[8]

49.     "[R]esearch has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[9]

50.     "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[10] This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[11]

51.     Accordingly, research confirms that deceptive advertising through false reference pricing is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

### A. Consumers Suffered Harm

52.     Based on Defendant's advertisements, reasonable consumers would expect that the listed reference prices are the regular or former prices at which Defendant usually sells its Products.

---

,RetailMeNot%20Survey%3A%20Deals%20and%20Promotional%20Offers%20Drive%20Incremental%20Purchases%20Online,finding%20a%20coupon%20or%20discount. (last visited September 11, 2024).

[8] Joan Lindsey-Mullikin & ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

[9] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

[10] Jerry B. Gotlieb & Cyndy Thomas Fitzgeral, *An Investigation Into The Effects of Advertised References Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990).

[11] *Id*.

53.     Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose actual regular or former price is the advertised regular or former price and that they will receive the advertised discount from the regular or former purchase price.

54.     Plaintiffs and consumers paid a "price premium" for the Products. If the reference prices were omitted from the product listings, the Plaintiffs would not have purchased the Products.

55.     Also, as further described above, Plaintiffs and consumers are more likely to buy the Products if they believe that the product is on sale and that they are getting Products with a higher regular or former price at a substantial discount.

56.     Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above.

**III.     Defendant's Deceptive Pricing Practices Violate Federal and California State Law**

57.     The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Under 16 C.F.R. § 233.1, which is titled Former Price Comparisons, the FTC prohibits such misleading price comparisons as the ones employed by Defendant:

(a)     One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the ***former price*** is the actual, bona fide price at which the article was offered to the public ***on a regular basis for a reasonably substantial period of time***, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an ***artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction*** – the "bargain" being advertised ***is a false one***; the purchaser is not receiving the unusual value he expects.

(b)     A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the

recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" ***This is obviously a false claim***. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he ***never offered the article at all***; he might feature a price which was ***not used in the regular course of business***, or which was ***not used in the recent past*** but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was ***not maintained for a reasonable length of time***, but was immediately reduce.

16 C.F.R. § 233.1 (emphasis added).

58.    The FTCA expressly prohibits the advertising of fictitious former prices, like the scheme employed by Defendant, regardless of whether the product advertisements and representations use the words "regular," "original," or "former" price:

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

16 C.F.R. § 233.1.

59.    Defendant's pricing scheme directly violates the FTCA.

60.     In addition, Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

61.     Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501.

62.     In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

63.     And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

64.     Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices without the intent to sell goods having those former prices. Defendant made false and misleading statements of fact concerning the reason for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful and deceptive business practices.

## CLASS ALLEGATIONS

65.     Plaintiffs bring this action individually and on behalf of all others similarly situated. The proposed class is defined as:

**California Class:**

All persons residing in the State of California who, during the applicable limitations

period, purchased one or more items from trynood.com, at a represented discount from a higher reference price.

66.    Excluded from the Class is Defendant, its subsidiaries and affiliates, officers, directors, the members of their immediate families, and any entity in which any Defendant has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

67.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class if necessary, before this Court determines whether certification is appropriate.

68.    This case is properly brought as a class action under Fed. R. Civ. P. 23 and all requirements are met for the reasons set forth in the following paragraphs.

69.    *Numerosity*. The members of the Class are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to discovery, the Class consists of many thousands of members, the identity of whom are within the exclusive knowledge of Defendant and can be ascertained only by resorting to Defendant's records, discovery, and other third-party sources.

70.    *Commonality*. There are numerous questions of law and fact common to the Class relating to Defendant's business practices challenged herein, and those common questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

- o    Whether Defendant's labeling, advertising, and marketing of the Products is false and misleading;
- o    Whether Defendant advertised false reference prices on Products offered;
- o    Whether Defendant advertised price discounts from the false reference prices on the Products offered;
- o    Whether the Products listed on Defendant's website were offered at their reference price within the three months preceding purchases by Plaintiffs and class members;

25

1        o   Whether Defendant's misrepresentations were material to reasonable consumers;

2        o   Whether Defendant engaged in unlawful or unfair conduct prohibited by the

3            California UCL;

4        o   Whether Defendant engaged in conduct prohibited by the California FAL;

5        o   Whether Defendant violated the CLRA's prohibition on unfair methods of

6            competition and/or unfair and deceptive practices;

7        o   Whether Defendant violated the FTCA;

8        o   Whether Defendant harmed the Plaintiffs and members of the Class;

9        o   the proper measure of damages; and

10       o   the declaratory and injunctive relief to which the Class is entitled.

11     71.   *Typicality.* Plaintiff's claims are typical of the claims of the other Class members in

12 that they arise out of the same wrongful business practices engaged in by Defendant, as described

13 herein.

14     72.   *Adequacy of Representation.* Plaintiffs are adequate representatives of the Class

15 because Plaintiffs have sustained damage as a result of Defendant's uniform conduct. In addition:

16        o   Plaintiffs are committed to the vigorous prosecution of this action individually

17            and on behalf of and all others similarly situated and have retained competent

18            counsel experienced in the prosecution of class actions and, in particular, class

19            actions on behalf of consumers against financial institutions;

20        o   There is no hostility of interest between Plaintiffs and the unnamed Class

21            members;

22        o   Plaintiffs anticipate no difficulty in the management of this litigation as a class

23            action; and

24        o   Plaintiffs' legal counsel has the financial and legal resources to meet the

25            substantial costs and legal work associated with this type of litigation.

26     73.   *Predominance.* The questions of law and fact common to the Class as set forth in the

27 "commonality" allegation above predominate over any individual issues. As such, the

28 "commonality" allegations are restated and incorporated herein by reference.

74.     *Superiority.* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation and since the financial resources of Defendant are significant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

75.     All conditions precedent to bringing this action have been satisfied and/or waived.

### FIRST CAUSE OF ACTION
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200,** *et seq***.)**
**(On behalf of Plaintiffs and the California Class)**

76.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

77.     Plaintiffs and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

78.     The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

79.     Defendant violated the UCL by engaging in "unlawful, unfair, and fraudulent business ats or practices" and engaging in "unfair, deceptive, untrue or misleading advertising," including advertising false and deceptive reference prices on its Products. Cal. Bus. & Prof. Code § 17200.

**a.   *Unlawful Prong***

80.    As a result of engaging in the conduct alleged in this Complaint, Defendant has violated the UCL's proscription against engaging in "unlawful" conduct by virtue of their violations of the following laws:

    (1)    **California Bus. & Prof. Code § 17501**: As further detailed in this Complaint, Defendant violated California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 and 17501.

    (2)    **The Federal Trade Commission Act**: As detailed in this Complaint, Defendant violated 16 C.F.R. §§ 233.1 and 233.5.

    (3)    **Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)**: As alleged below, Defendant's conduct, individually and collectively, violates section 1770(a)(5), (7), (9), and (13) of the CLRA. Therefore, Defendant has also violated the UCL's "unlawful" provision.

81.    Plaintiffs reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date. Unless restrained and enjoined, Defendant will continue to engage in the unlawful conduct described herein.

82.    Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and the Class. As described herein, Defendant made false and deceptive advertisements and representations regarding the reference prices on the Products it claimed were on sale. But for Defendant's unlawful and unfair conduct, Plaintiffs and Class members would not have purchased the Products.

83.    Plaintiffs have suffered injury in fact and have lost money as a result of Defendant's conduct.

84.    Accordingly, Plaintiffs and Class Members seek restitution from Defendant of all money obtained from Plaintiffs and the Class as a result of Defendant's unlawful acts.

**b. *Unfair Prong***

85.    As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "unfair" business practices.

86.     Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

87.     Defendant's unfair conduct alleged in the Complaint is illegal, deceptive, unethical, and unscrupulous. Under federal and state law, making false and deceptive claims about products being marketed and sold to consumers violates the UCL.

88.     Defendant's deceptive marketing gave consumers the false impression that their products were regularly listed or sold on the websites for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendant's products were being sold at a discount to a regular price.

89.     Furthermore, these acts and practices offend public policy by violating the CLRA and the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code 17500, *et seq.*

90.     Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers.

91.     Therefore, Defendant's conduct was and continues to be "unfair."

92.     Defendant's violations of the UCL continue to this day. Unless restrained and enjoined, Defendant will continue to engage in the unfair conduct described herein. Plaintiffs would buy again from the Nood website if they knew that the pricing misrepresentations were halted and if they had the opportunity to evaluate the actual prevailing price and actual discount prices of the Product.

93.     Defendant's conduct caused and continues to cause substantial injury to Plaintiffs, as well as the Class members.

94.     The harm to Plaintiffs and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

95.     Accordingly, Plaintiffs and the Class seek restitution from Defendant of all money obtained from Plaintiffs and the Class members as a result of Defendant's unfair competition.

1

### c. *Fraudulent Prong*

2      96.      As a result of engaging in the conduct alleged herein, Defendant has violated the

3  UCL's proscription against "fraudulent" business practices.

4      97.      Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is

5  likely to deceive members of the consuming public. Defendant affirmatively misrepresented the

6  reference prices of products which, in turn, misled and deceived consumers into believing that they

7  were buying products at substantially discounted prices. Defendant's deceptive marketing gave

8  consumers the false impression that its products were regularly listed or sold on the website for a

9  substantially higher price in the previous three months. Because Defendant misled Plaintiffs and

10  members of the Class, Defendant's conduct was "fraudulent."

11      98.      Defendant's advertisements concerning the reference price of Products on its

12  websites were fraudulent business acts in violation of the UCL. These acts were reasonably likely

13  to deceive consumers, and in fact did deceive Plaintiffs and induce them into purchasing

14  Defendant's Products.

15      99.      Defendant knew its Products were not actually sold at the higher reference price for

16  a three month period of time preceding Plaintiffs' and Class Members' purchases.

17      100.      Defendant had a duty to disclose the truth about its pricing deception, including that

18  the reference prices advertised on its website were not, in fact, prices at which Defendant's items

19  were listed or sold on the website in the previous three months, but in truth, the products never (or

20  rarely) were offered or sold at the reference prices.

21      101.      Defendant made these statements with the intention that Plaintiffs would see them

22  and rely on them to purchase their Products, and, in fact, Plaintiffs did rely on Defendant's

23  fraudulent misrepresentations on Defendant's websites when purchasing the Products.

24      102.      If not for Defendant's fraudulent acts and practices, Plaintiffs would not have

25  purchased the Products.

26      103.      As a result, Plaintiffs and Class Members suffered substantial injury and lost money

27  due to Defendant's conduct.

28

104.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. As a result of Defendant's fraudulent business acts and practices, Defendant has and/or continues to fraudulently obtain money from Plaintiffs and Class Members.

105.    Plaintiffs request that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S FALE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq***
**(On behalf of Plaintiffs and the California Class)**

106.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

107.    This Claim is brought on behalf of the California class, which is referred to in this section as the "Class."

108.    Defendant violated Cal. Bus. & Prof. Code §§ 17500 and 17501.

109.    The California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*., by states, in part, that:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, **which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…**

Cal. Bus. & Prof. Code § 17500. (emphasis added).

110.    The FAL also provides that:

For the purposes of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a ***former price*** of any advertised thing, unless the alleged former price was the ***prevailing market price*** as above defined within ***three months next immediately preceding*** the publication of the advertisement of unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. (emphasis added).

111.    As used in the FAL:

(a) The term "prevailing market price" refers to the "retail [price] if the offer is at retail."

(b) The term "advertised thing" refers to the exact same product offered—***not*** an equivalent or similar product. *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 412 (2019) ("if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features … the market and therefore the market price is potentially determined on the basis of sales of ***that item only***.") (emphasis added).

(c) The term " 'former price' … includes but is not limited to the following words and phrases when used in connection with advertised prices: 'formerly—,' 'regularly—,' 'usually—,' 'originally—,' 'reduced from ___,' was ___ now __,' '___% off.'" 4 Cal. Code Regs., § 1301 (emphasis added).

(d) The "three-month period is properly construed as a 'rolling' period, that is, one whose beginning and end changes each day, thus requiring a daily recalculation of the prevailing market price during the three-month period." *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 416 n.26 (2019) (emphasis added).

112.    As alleged more fully above, Defendant advertises former prices along with discounts on its websites. Defendant does this, for example, by crossing out a higher price (e.g.

$150) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices denoted as regular prices from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charges before the discount went into effect.

113.    The reference prices advertised as former or regular prices on Defendant's websites are not former or regular prices under the FAL. Defendant rarely, if ever, offered Products on the websites at the reference prices within three months immediately preceding the publication of the reference prices. Additionally, the reference prices shown were not the prevailing market prices for the Products in the three months immediately preceding the publication.

114.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the false reference prices when purchasing Defendant's Products. Defendant's misrepresentations were a substantial factor in the Plaintiff's purchase decisions.

115.    Plaintiffs relied on Defendant's false advertisements with regard to the Products, at the time of purchase.

116.    As a result of Defendant's violation of the FAL, Plaintiffs and Class Members suffered substantial injury and lost money.

117.    Pursuant to Cal. Bus. & Prof. Code § 17535, this Court has the power to award such equitable relief, including but not limited to an order declaring the reference prices listed on Defendant's Products' to be unlawful, an order enjoining Defendant from engaging in any such further unlawful conduct, and an order directing Defendant to refund to Plaintiffs and Class Members all monies wrongfully collected as a result of its false advertisements.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code §§ 1750, *et seq.*)**
**(On behalf of Plaintiffs and the California Class)**

118.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

119.    Plaintiffs and members of the Class are "consumers," as that term is defined by Civil Code § 1761(d), because they purchased Products for personal, family, or household purposes.

120.    Plaintiffs and Class members have engaged in a "transaction" with Defendant, as that term is defined by Civil Code § 1761(e).

121.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for purposes of the CLRA, and was undertaken by Defendant in transactions intended to result in, and which resulted in, the sale of goods or services to consumers.

122.    As described more fully above, Defendant made and disseminated untrue and misleading statements of fact in its advertisements to class members. Defendant did this by using fake reference prices, i.e., reference prices that are not the prevailing market price, and/or were not the prevailing market price within the three months preceding the publication of the discount, and advertising fake discounts.

123.    As a result of Defendant's conduct, Plaintiffs and Class members purchased Defendant's Products for their use.

124.    By engaging in the conduct described herein, Defendant has violated the following subdivision of California Code § 1770(a) by:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have
> …

> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

> (9) Advertising goods or services with intent not to sell them as advertised.

> (13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

125.    Regarding section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because (a) no true price reductions existed in that Defendant's Products were rarely, if ever, offered for sale and/or sold on the websites at the higher reference prices, let alone on a regular basis within the three months immediately preceding the publication of the reference prices, (b) the reference prices Defendant

advertised in connection with its Products are not prevailing market prices because, on information and belief, the Products were not sold elsewhere at the reference prices on a regular basis within the three months immediately preceding the publication of the reference prices, and (c) Defendant falsely represents the Products as on sale for a limited time when in truth it appears they are perpetually sold at the advertised "sale" prices.

126.     With regards to sections 1770(a)(5), (7), and (9), Defendant advertised and represented Products on the websites with the "intent not to sell" them as advertised and misrepresenting product characteristics and standards because, as explained herein, the false reference prices advertised in connection with products offered on the website misled and continue to mislead customers into believing the Products were previously offered for sale and/or sold on the websites at the higher reference prices during the three months preceding the advertisement.

127.     Defendant intended for Plaintiffs and the Class to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged above.

128.     Defendant's violations of the CLRA proximately caused injury in fact to Plaintiffs and the Class.

129.     Plaintiffs reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiffs would not have purchased the items he purchased from Defendant. Plaintiffs' reliance was a substantial factor in causing him harm.

130.     Pursuant to Cal. Civ. Code § 1782(d), Plaintiff, individually and on behalf of the Class, seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

131.     On or about July 29, 2024, pursuant to Cal. Civ. Code § 1782(a), Defendant was sent in writing, by certified mail, notice of the violations of Section 1770 of the CLRA, which notification demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

132.     Plaintiffs sent a CLRA notification letter and Defendant failed to rectify or agree to rectify the problems associated with the actions detailed above or give notice to all consumers within

COMPLAINT FOR DAMAGES

30 days of receipt of the CLRA notice. Accordingly, Plaintiffs seek damages, as permitted and appropriate.

<strong>REQUEST FOR RELIEF</strong>

WHEREFORE, Plaintiffs and members of the Class, respectfully request that the Court:

    a.   Certify this case as a class action, designating Plaintiffs as class representatives and designating the undersigned as Class Counsel;

    b.   Declaring that Defendant's conduct violates the statutes set forth above;

    c.   Award Plaintiffs and the Class actual damages in an amount according to proof;

    d.   Award Plaintiffs and the Class restitution in an amount to be proven at trial;

    e.   Award Plaintiffs and the Class pre-judgment interest in the amount permitted by law;

    f.   Award Plaintiffs and their attorneys fees and costs as permitted by law;

    g.   Declare Defendant's practices outlined herein to be unlawful;

    h.   Grant equitable and/or injunctive relief, including to enjoin Defendant from engaging in the practices outlined herein;

    i.   Grant Plaintiffs and the Class a trial by jury;

    j.   Grant leave to amend these pleadings to conform to evidence produced at trial; and

    k.   Grant such other relief as the Court deems just and proper, including all forms of relief provided for under the UCL, CLRA, and FAL.

<strong>JURY DEMAND</strong>

Plaintiffs, by counsel, demand a trial by jury.

Dated: January 9, 2025        Respectfully submitted,

**ZIMMERMAN REED LLP**
Caleb Marker
Jeff Westerman
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
(877) 500-8780 Telephone
(877) 500-8781 Facsimile
jeff.westerman@zimmreed.com
caleb.marker@zimmreed.com

COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

/s/ Charles Toomajian III
**ZIMMERMAN REED LLP**
Charles Toomajian III (SBN 302153)
1100 IDS Center
80 S 8th Street
Minneapolis, MN 55402
(612) 341-0400 Telephone
charles.toomajian@zimmreed.com

**JENNINGS PLLC**
Tyler B. Ewigleben*
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@jenningspllc.com
tyler@jenningspllc.com
winston@jenningspllc.com

* *Pro Hac Vice* application to be submitted

*Counsel for Plaintiffs and the Proposed Class*

COMPLAINT FOR DAMAGES